Filed 8/11/15  People v. Denman CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

　　Plaintiff and Respondent,

v.

EUGENE DENMAN,

　　Defendant and Appellant.

E061390

(Super.Ct.No. RIF10000870)

OPINION

APPEAL from the Superior Court of Riverside County.  Jean P. Leonard and Elisabeth Sichel, Judges.  Affirmed in part; reversed in part with directions.

Kenneth H. Nordin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Sharon L. Rhodes, Deputy Attorneys General, for Plaintiff and Respondent.

This is the second appeal filed by defendant and appellant Eugene Denman in this court. Defendant had filed quitclaim deeds on nine properties that he did not own, transferring title to himself, and then claimed to be living in each of them. He was found guilty of 20 counts of recording false documents and nine counts of perjury. We affirmed his convictions in his first appeal. (*People v. Denman* (2013) 218 Cal.App.4th 800 (*Denman*).) However, we remanded the case to the trial court with directions for the trial court to impose a mandatory fine pursuant to Penal Code section 186.11, subdivision (c),[1] and to recalculate the numbers of days of presentence conduct credit to which defendant was entitled in accordance with the directions in the opinion. (*Denman*, at pp. 813-817.)

Upon remand, defendant sought to represent himself. His *Faretta*[2] motion was granted. The trial court ordered that defendant pay a $25,000 fine pursuant to section 186.11, subdivision (c). It then stayed that $25,000 fine and ordered that he pay $5,000. If he paid the $5,000 and successfully completed parole, the $25,000 fine would be dismissed. The trial court recalculated defendant's presentence conduct credits.

Defendant now claims on appeal as follows: (1) the judgment must be reversed because defendant's federal constitutional right to counsel was denied when the trial court granted his "involuntary" request to represent himself; (2) section 186.11, subdivision (c) did not authorize a stayed $25,000 fine; and, (3) clerical errors on the abstract of judgment must be corrected. We again order remand to the trial court for

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).

proper imposition of the fine pursuant to section 186.11, subdivision (c). We otherwise affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

### A. PROCEDURAL BACKGROUND

Defendant, who represented himself at trial, was found guilty by a Riverside County jury of 20 counts of recording false documents (§ 115) and nine counts of perjury (§ 118). Relevant here, the jury also found true the enhancement that defendant engaged in a pattern of fraudulent activity that involved the taking or loss of more than $500,000 within the meaning of section 186.11, subdivision (a)(2). Defendant received a total state prison sentence of 23 years 8 months. He was given credit for 502 actual days in custody and 250 days of conduct credit. (*Denman*, *supra*, 218 Cal.App.4th at p. 804.) In the prior appeal, we ordered that remand was appropriate in order for the trial court to impose the mandatory fine required pursuant to section 186.11, subdivision (c), and to recalculate his presentence conduct credits. (*Denman*, at p. 817.)

Upon remand, on December 26, 2013, defendant filed, in propria persona, a motion for restitution hearing pursuant to section 1202.4 and request for an evidentiary hearing.[3] The trial court set a hearing for January 24, 2014. However, it was determined that the remittitur had not issued and the matter was continued.

---

[3] It is not entirely clear why defendant filed this motion or what review he was seeking.

A memorandum was prepared by the probation department to recalculate the conduct credits and "Restitution." The memorandum noted that "restitution" was only appropriate for two victims, as four of the victims did not want to pursue the matter. The probation report also provided that defendant was entitled to a day of credit for each day he served from February 22, 2010, to his sentencing date on July 8, 2011. This was calculated as 502 days actual custody credit and 502 days of conduct credit, for a total credit of 1,004 days.

At the hearing on March 28, 2014, defendant asked to be granted in propria persona status so he could access his legal papers and the law library. The motion was granted as will be set forth in more detail, *post.*

On May 23, 2014, after a hearing, the trial court ordered defendant to pay a fine in the amount of $25,000 pursuant to section 186.11, subdivision (c). However, it ordered the amount stayed and ordered defendant to pay $5,000. If defendant paid the $5,000 and successfully completed parole, the $25,000 fine would be dismissed. In addition, defendant was given presentence custody credit as calculated by the probation department.

B. FACTUAL BACKGROUND

The underlying facts are not relevant to the issues raised in the instant appeal. Briefly, defendant searched records for distressed properties in Riverside County. He found nine such properties. He recorded quitclaim deeds on these properties transferring ownership to himself. He then filed homestead declarations claiming he lived in the

4

properties. Defendant never owned any interest in these properties and other persons lived on these properties. (*Denman*, *supra*, 218 Cal.App.4th at pp. 804-808.)

**DISCUSSION**

A.      *FARETTA* MOTION

Defendant contends that the trial court erred by granting his "involuntary" *Faretta* motion.

1.      ADDITIONAL FACTUAL BACKGROUND

Defendant represented himself at trial but was appointed counsel to handle his appeal. Upon remand to the trial court, defendant filed a motion, in propria persona, to have the trial court calculate restitutions fines.

Defendant first appeared in Judge Elisabeth Sichel's courtroom.[4] Defendant immediately asked for an in propria persona order. Defendant needed his legal papers that were being held by the jail, and access to the law library. Judge Sichel then noted that defendant had represented himself at trial but had been represented by counsel on appeal. Since he had been represented by counsel on appeal, he no longer had in propria persona status. Judge Sichel asked defendant, "So I can restore your pro per status if that's what you're asking for." Defendant responded, "Absolutely."

Judge Sichel then informed defendant that he had a right to be represented by an attorney, that it was not recommended that he represent himself, and that he had the right to represent himself. Defendant responded, "I understand my *Faretta* rights." Judge

---

[4] Defendant's trial was conducted by Judge Jean Pfeiffer Leonard, but she was sick on the day that defendant appeared.

5

Sichel then asked defendant, "Okay. And understanding that, can you tell me how much education have you had?" Defendant responded, "My problem is, is the reasons why I'm going pro per is because I'm receiving ineffective assistance of counsel—." Judge Sichel responded, "Okay. Just answer my question so I can make the order."

Defendant advised Judge Sichel that he had been to college and previously won cases while representing himself. Judge Sichel found that defendant had knowingly and freely waived his right to counsel. Judge Sichel granted defendant's *Faretta* motion. Thereafter, defendant stated, "But it's not voluntary. I'm receiving ineffective assistance of counsel from the court-appointed counsel where they failed to address my meritorious claim, and I'm claiming it's a privacy claim. I can't get a standby—can I get a standby attorney?" Judge Sichel responded, "No, not for this type of case. At this point in the case, there's no point. We're just here to correct some fines and fees I think basically." The matter was continued so the trial judge, Judge Leonard, could address the matters to be considered on remand.

The matter was then heard in front of Judge Leonard. Judge Leonard immediately stated that she was aware that Judge Sichel had talked to defendant about representing himself but that she wanted to go over the issue again. Judge Leonard advised defendant that he could be appointed counsel if he wanted to be represented. Defendant did not immediately respond to the question and asked to make a statement first. Judge Leonard advised defendant, "Sir, first of all is this issue. I don't want [to] hear anything from you today if you want an attorney. If you want an attorney then I'm not going to hear anything today until you talk with your attorney, and you want to go forward and

6

represent yourself, then we'll get started, and we'll have a hearing  And I will hear from you today, and we will do all of the things that we need to do today.  But the first is whether or not you want to be represented.  What do you want to do on that one issue?"  Defendant responded, "Well, I'd like to represent myself."

### 2.    ANALYSIS

A "defendant . . . possesses two mutually exclusive constitutional rights under the Sixth Amendment of the United States Constitution regarding representation:  the right to be represented by counsel at all critical stages of a criminal prosecution, and the right to represent himself or herself.  [Citation.]" (*People v. Tena* (2007) 156 Cal.App.4th 598, 604 [Fourth Dist., Div. Two]; see also *People v. Marshall* (1997) 15 Cal.4th 1, 20.)  "A trial court must grant a defendant's request for self-representation if three conditions are met.  First, the defendant must be mentally competent, and must make his request knowingly and intelligently, having been apprised of the dangers of self-representation.  [Citations.]  Second, he must make his request unequivocally.  [Citations.]  Third, he must make his request within a reasonable time before trial." (*People v. Welch* (1999) 20 Cal.4th 701, 729; see also *Faretta*, *supra*, 422 U.S. at p. 835.)[5]

"'[T]he court's duty goes beyond determining that some of [the] defendant's words amount to a motion for self-representation.  The court should evaluate all of a defendant's words and conduct to decide whether he or she truly wishes to give up the right to counsel and represent himself or herself and unequivocally has made that clear.'"

---

[5] The People have not argued that the *Faretta* motion was untimely.

7

(*People v. Tena*, *supra*, 156 Cal.App.4th at p. 607.) "In determining on appeal whether the defendant invoked the right to self-representation, we examine the entire record de novo. [Citations.]" (*People v. Stanley* (2006) 39 Cal.4th 913, 932.)

Here, both Judges Sichel and Leonard properly determined that defendant unequivocally requested to represent himself. Defendant initiated the request to represent himself; he advised Judge Sichel that he "absolutely" wanted to proceed in propria persona. Defendant was advised by Judge Sichel of the pitfalls of representing himself, and he responded that he knew his *Faretta* rights. Defendant clearly was aware of his right to represent himself as he had represented himself at trial. Further, defendant once again confirmed that he wanted to represent himself in front of Judge Leonard. Judge Leonard advised defendant that he could still be appointed an attorney. A continuance would be granted if he chose to be represented. Defendant unequivocally responded that he wanted to represent himself. A review of the entire record makes it clear that defendant knowingly and intelligently waived his right to counsel, having been apprised of the dangers of self-representation, and he made his request unequivocally. (*People v. Welch*, *supra*, 20 Cal.4th at p. 729.)

Defendant contends that Judge Sichel should have conducted a *Marsden*[6] hearing rather than deem his request to be granted in propria persona status, because he only wanted to represent himself because he received ineffective assistance of counsel. Defendant's statement to Judge Sichel is properly interpreted to raise the issue that he

---

[6] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

8

received ineffective assistance from his appellate counsel, who did not raise the issues defendant wanted raised on appeal. At the time that defendant claimed he received ineffective assistance of counsel, he was no longer represented by appellate counsel. A *Marsden* motion for substitution of counsel raises "the question of existing counsel's competency." (*People v. Burton* (1989) 48 Cal.3d 843, 855.) Defendant could not address appellate counsel's competency upon remand. There was absolutely no basis for the trial court to conduct a *Marsden* hearing as defendant was not represented by counsel.

Defendant represented himself at trial, and upon remand, unequivocally exercised his right to self-representation. The trial court did not error by granting defendant's *Faretta* motion.

## B. FINE PURSUANT TO SECTION 186.11, SUBDIVISION (C)

Defendant contends, and the People agree, that the trial court could not impose and stay a $25,000 fine under section 186.11, subdivision (c). Defendant asks this court to strike the $25,000 fine resulting in him being responsible for only the $5,000 fine ordered to be immediately paid. Respondent requests that the matter be remanded in order for the trial court to exercise its discretion to impose the appropriate fine.

### 1. REMAND PROCEEDINGS

As stated, we remanded the case for the purpose of recalculating conduct credits and to "impose the appropriate fine pursuant to section 186.11, subdivision (c)." (*Denman*, *supra*, 218 Cal.App.4th at p. 817.)

9

Upon remand, the trial court stated that it had simply forgotten to impose the fine pursuant to section 186.11, subdivision (c). The trial court had read the section. The trial court then stated that it had read the probation report in which none of the victims had responded as to the value of the property taken. It noted, "It appears that the Court would have to go forward on [section] 186.11[, subdivision ](c) and order a fine of $500,000 since we don't have any information regarding the restitution owed. I can't double anything. If I double zero, it's zero." The prosecutor pointed out that restitution to the victims and the section 186.11 fine were different. Further, the fine pursuant to section 186.11, subdivision (c) did not have to go to the victims but rather to a compensation fund.

The trial court clarified that it was attempting to determine the amount of the taking but there was no information. The trial court stated, "So it looks to me like the fine has to be set at $500,000. Of course then the next step is, does [defendant] have the ability to pay." The prosecutor agreed. Defendant objected to the $500,000 fine. The trial court reiterated there was no evidence of the amount of the taking and that it was authorized, based on the jury's finding of the enhancement, that it could order a fine of $500,000.

The prosecutor then noted that the statute did not require the payment of $500,000. He stated, "Typically what we see is, we may see someone who steals maybe $300,000, and we might ask for a $50,000 fine, $20,000 fine because we can apply some of those fines to pay for investigation . . . . One thing I don't want is for the Court to issue a $500,000 fine, which there's no way he is going to be able to pay, being realistic. You

10

know, I would be inclined that the Court impose some fine that would be realistic that he actually could pay. And that we earmark those funds to go towards the victims of real estate fraud." The trial court agreed that the $500,000 was not mandatory and it could impose a lesser amount.

The prosecutor agreed it was difficult to assess the amount of the taking. Defendant wanted the trial court to consider his ability to pay. The People again recommended a fine in the amount of "20, $30,000." The trial court asked defendant's opinion on the fine and defendant questioned how the People calculated that amount. The trial court stated, "Because the People just asked me for that. It doesn't have to be—this is a fine that you don't have to base an exact down to the penny amount on. This is a fine to stop people from doing what you did." Defendant only responded that the prosecutor was misquoting the law.

The trial court then ruled, "So, at this time, the Court, obviously, has been reviewing this case for a long time. A couple of months, in fact. And my amount that I was—keep coming back to was about $25,000. That seems to be the amount that I keep settling on. I was at one point looking at $500,000, but you're right, [prosecutor]. [Defendant] can't pay that at all. And that would be silly. It's sort of like sentencing somebody to 900 years in state prison." The trial court imposed the $25,000 fine.

The trial court proceeded to have a hearing about defendant's ability to pay the fines. The trial court reiterated that a $25,000 fine was appropriate because the fine was to punish him and deter others from engaging in the same type of crime. The trial court would not change the fine. It stated, "my only concern is, at this point, your ability to

11

pay. And I don't think you have an ability to pay $25,000, even if you worked every day and took every dime you had and put it towards the payment of this crime." It ruled, "As to the $25,000 fine, I will order that you pay restitution in that regard in the amount of $5,000. And I do think that you have an ability to pay that amount. I will order, though, that the $25,000 fine be stayed subject to [the] successful completion of parole. So if you don't complete your parole in this matter, you still owe the $25,000."

2. ANALYSIS

"'Where a reviewing court reverses a judgment with directions . . . the trial court is bound by the directions given and has no authority to retry any other issue or to make any other findings. Its authority is limited wholly and solely to following the directions of the reviewing court.'" (*People v. Dutra* (2006) 145 Cal.App.4th 1359, 1367.) "In an appeal following a limited remand, the scope of the issues before the court is determined by the remand order." (*People v. Murphy* (2001) 88 Cal.App.4th 392, 396-397.) This court remanded the matter in order for the trial court to impose the mandatory fine pursuant to the language of section 186.11, subdivision (c).

Subdivision (c) of section 186.11 provides as follows: "Any person convicted of two or more felonies, as specified in subdivision (a), shall also be liable for a fine not to exceed five hundred thousand dollars ($500,000) or double the value of the taking, whichever is greater, if the existence of facts that would make the person subject to the aggravated white collar crime enhancement have been admitted or found to be true by the trier of fact. However, if the pattern of related felony conduct involves the taking of more than one hundred thousand dollars ($100,000), but not more than five hundred

12

thousand dollars ($500,000), the fine shall not exceed one hundred thousand dollars ($100,000) or double the value of the taking, whichever is greater." "Section 186.11, subdivision (a)(1), as it read at the time that defendant recorded the quitclaim deeds and homestead declarations, provides in pertinent part as follows: 'Any person who commits two or more related felonies, a material element of which is fraud or embezzlement, which involves a pattern of related felony conduct, and the pattern of related felony conduct involves the taking of, or results in the loss by another person or entity of, more than one hundred thousand dollars ($ 100,000), shall be punished, upon conviction of two or more felonies in a single criminal proceeding, in addition and consecutive to the punishment prescribed for the felony offenses of which he or she has been convicted . . . .'" (*Denman*, *supra*, 218 Cal.App.4th at p. 813.) The imposition of the fine under section 186.11, subdivision (c) is mandatory. (*People v. Lai* (2006) 138 Cal.App.4th 1227, 1251.)

Both parties concede on appeal that the trial court did not have the authority to impose and stay the $25,000 fine. Nothing in the language of the statute authorizes a stay of the fine. We also note that section 186.11 has no ability-to-pay provision and defendant appears to agree. The trial court clearly erred by conducting a hearing to determine how much of the $25,000 fine defendant was able to pay, and staying the $25,000 fine. It is not clear if the trial court would have imposed the $25,000 fine had it been aware that defendant's ability to pay the fine was not to be considered.

Defendant contends that this court should strike the $25,000 fine that was stayed by the court. He contends that section 186.11, subdivision (c), conferred upon Judge Leonard the discretion to consider whether the state would receive payment from defendant and that he would learn his lesson by fulfilling his obligation to pay the $5,000. We disagree that the trial court did not consider his ability to pay. It imposed the $25,000 fine but then held a separate hearing to determine defendant's ability to pay. The language of the statute is clear; the trial court is to impose a fine "not to exceed" $500,000 or "double the value of the taking, whichever is greater." There is no consideration of the defendant's ability to pay.[7]

We remand for the trial court to impose the fine under section 186.11, subdivision (c) in accordance with the language and purpose of the statute.[8]

---

[7] We express no opinion as to the amount of the section 186.11, subdivision (c) fine that should be imposed upon remand. However, we note that in *People v. Serrato* (1973) 9 Cal.3d 753, 764, the Supreme Court explained that an unauthorized sentence "is subject to being set aside judicially and is no bar to the imposition of a proper judgment thereafter, even though it is more severe than the original unauthorized pronouncement." (*Id*. at p. 764.) Further, the trial court should take into consideration the plain language of the statute and the purpose of section 186.11, which is to provide for greater punishment for those who engage in a pattern of fraudulent activity involving a large amount of accumulated takings. (*Denman*, *supra*, 218 Cal.App.4th at p. 813.)

[8] Since we have ordered remand of this case in order for the trial court to properly impose the section 186.11, subdivision (c) fine, the parties' additional arguments that the abstract of judgment should be corrected need not be addressed as a new abstract of judgment will be prepared.

## DISPOSITION

We reverse the trial court order staying the $25,000 fine pursuant to section 186.11, subdivision (c), and the imposition of a $5,000 fine.  The matter is remanded with directions to the trial court to properly impose the mandatory fine.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

HOLLENHORST
Acting P. J.

McKINSTER
J.

15